**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| **STEFANIE HONEYCUTT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. _____ |
| | ) | |
| **CAPITAL FINANCIAL CREDIT, LLC,** | ) | |
| **MICHELE MILNER, and HOSTO &** | ) | |
| **BUCHAN, P.L.L.C.,** | ) | |
| | ) | Jury Trial Demanded |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants regularly attempt to collect debts here.

### PARTIES

4. Plaintiff Stefanie Honeycutt (hereinafter referred to as "Plaintiff") is a natural person who resides in Blount County, Tennessee and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

1

5. Defendant Capital Financial Credit, LLC (hereinafter "Defendant Capital Financial") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a for-profit limited liability company organized in Georgia that maintains James R. Curry, Jr., 600 Garnett Street, Suite 7, Buford, GA 30518 as its registered agent for service of process.

6. Defendant Michelle Milner (hereinafter "Defendant Milner") is a natural person who is employed by Defendant Capital Financial as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served at her business address of 600 Garnett Street, Suite 7, Buford, GA 30518, or her home address.

7. Defendant Hosto & Buchan, PLLC (hereinafter "Defendant Hosto") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a for-profit professional limited liability company organized in Arkansas that maintains Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203 as its registered agent for service of process.

## FACTUAL ALLEGATIONS

8. Defendant Capital Financial is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

9. Defendant Capital Financial intentionally makes a business decision not to obtain the written contracts signed by consumers or other evidence of the alleged debt when purchasing charged-off consumer debts or prior to filing state court collection lawsuits against consumers.

10. Defendant Hosto intentionally makes a business decision not to obtain the written contracts signed by consumers or other evidence of the alleged debt prior to filing state court collection lawsuits against consumers.

11. Defendants have alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card debt allegedly originally owed to or serviced by Citibank (South Dakota) N.A. (hereinafter "Citibank"), which went into default, and on which Defendants alleged Plaintiff owed approximately $5,576.00, as of July 9, 2010.

12. Prior to July 9, 2010, the debt was sold or otherwise transferred to Defendant Capital Financial for collection from Plaintiff, when thereafter Plaintiff received collection communications and was subjected to collection acts from Defendants, all in an attempt to collect this debt.

### Collection Lawsuit

13. Within one year prior to the filing of this Complaint, on or about July 9, 2010, Defendants filed a Civil Warrant and Affidavit against Plaintiff in the General Sessions Court of Blount County, Tennessee (hereinafter "collection lawsuit"). A copy of the July 9, 2010 collection lawsuit is filed as Collective Exhibit 1 to this Complaint.

14. The Civil Warrant was a "communication" as defined by 15 U.S.C. § 1692a(2), and was made in connection with collection of a debt and in an attempt to collect a debt.

15. The Civil Warrant stated that the amount due was $5,575.11, including principal in the amount of $2,774.62, accrued pre-judgment interest of $2,245.57, and reasonable attorney fees in the amount of $554.92. See, Exhibit 1, p. 1.

16. The Affidavit was a "communication" as defined by 15 U.S.C. § 1692a(2), and was made in connection with collection of a debt and in an attempt to collect a debt.

17. The sworn Affidavit stated that the amount due was $2,774.62 plus interest accrued in the amount of $1,824.07, for a total amount due of $4,598.69 as of November 16, 2009. See Exhibit 1, p. 3, ¶ 2.

18. The Civil Warrant stated that Defendant Capital Financial was an assignee of Citibank. See, Exhibit 1, p. 1.

19. The collection lawsuit against Plaintiff was based on two counts: "[1] on sworn account see attached affidavit or [2] original contract". See, Exhibit 1, p. 1.

20. Defendants' breach of contract claim was facially defective because, despite the matter being continued three times after the initial hearing date of September 7, 2010 to June 27, 2011, when the lawsuit was nonsuited by Defendants, a copy of the signed contract was never provided to Plaintiff.

21. Defendants' sworn account claim was also defective because this claim was knowingly based on false, deceptive, and misleading statements in the sworn Affidavit filed with the Civil warrant that intended to deceive the state court and Plaintiff.

22. An affidavit filed in support of a civil warrant on a sworn account is filed to attest to the correctness of the amount allegedly owed on the account (See, Tenn. Code Ann. § 24-5-107(a)).

23. When debt buyers such as Defendant Capital Financial purchase defaulted consumer accounts, they do not receive any supporting documentation of the debt, including, but not limited to (a) the underlying contract, (b) anything bearing the consumer's signature, (c) any documentation regarding what was purchased or when, (d) monthly billing statements, (e) a payment history, (f) documents showing how the amount of the alleged

4

debt was calculated, or (g) any information which informs or shows them which portion of the charged-off debt is principal and which portion is interest.

24. The lack of documentation that debt buyers such as Capital Financial receive when they purchase the debt is reflected in the price of the debt, sometimes a little as a penny or two on the dollar.

25. When debt buyers such as Defendant Capital Financial claim contract interest in addition to the full amount written off, there is an unlawful and usurious claim for interest on interest.

26. When debt buyers such as Defendant Capital Financial and debt collection attorneys such as Defendant Hosto file collection lawsuits against Tennessee consumers on debt allegedly owned by debt buyers they fail to obtain written contracts signed by consumers or other supporting documentation of the debt, prior to filing the state court collection lawsuits.

27. When Defendant Capital Financial purchased Plaintiff's alleged debt, they did not receive any supporting documentation of the debt, including, but not limited to (a) the underlying contract between Citibank and Plaintiff, (b) anything bearing Plaintiff's signature, (c) any documentation regarding what Plaintiff purchased or when she made a purchase, (d) monthly billing statements, (e) a payment history, (f) documents showing how the amount of the alleged debt was calculated, or (g) any information which informs or shows them which portion of the alleged debt is principal and which portion is interest.

28. Prior to Defendants Capital Financial and Hosto filing the state court collection lawsuit against Plaintiff, they failed to obtain any supporting documentation of the debt, including, but not limited to (a) the underlying contract between Citibank and Plaintiff, (b) anything bearing Plaintiff's signature, (c) any documentation regarding what Plaintiff purchased or

when she made a purchase, (d) monthly billing statements, (e) a payment history, (f) documents showing how the amount of the alleged debt was calculated, or (g) any information which informs or shows them which portion of the alleged debt is principal and which portion is interest.

29. Because debt buyers such as Defendant Capital Financial and debt collection attorneys such as Defendant Hosto lack documentation necessary to establish a claim based on breach of contract, they often file collection lawsuits against Tennessee consumers on a sworn account, and attempt to support the claim with a false, deceptive and misleading affidavit.

30. In a majority of the cases, debt buyers such as Defendant Capital Financial and debt collection attorneys such as Defendant Hosto obtain a default judgment and the sufficiency of the debt buyer's affidavit and the related account are not challenged.

31. In those few instances where the consumer has the means and ability to defend the collection lawsuit, debt buyers such as Defendant Capital Financial and debt collection attorneys such as Defendant Hosto usually will dismiss the case rather than risk having its systemic fraud on the court exposed.

32. The collection lawsuit was filed by Defendants against Plaintiff in an attempt to collect a debt.

33. The filing of a collection lawsuit is a collection activity. See*, Anderson v. Frederick J. Hanna & Assocs.*, 361 F. Supp. 2d 1379, 1383 (N.D. Ga. 2005) ("Finally, Defendants argument that a lawsuit to collect a debt is not 'collection activity' is patently frivolous. The case cited by Defendants in support of this argument, *Vega v. McKay,* 351 F.3d 1334 (11th Cir.2003), merely held that a lawsuit did not constitute an 'initial communication'

triggering FDCPA notice requirements. Nothing in this holding suggests that a lawsuit does not constitute an attempt to collect a debt, which it obviously does."); Also, see, *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (the United States Supreme Court equated litigation with collection activities) ("In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts. See, e. g., Black's Law Dictionary 263 (6th ed. 1990) ('To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings'" *Id*. at 294)); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir.1997) ("The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor"); *McDaniel v. South & Assocs., P.C.*, 325 F.Supp.2d 1210, 1217 (D.Kan.2004)(finding that under the FDCPA, a debt collector cannot file a lawsuit after the consumer disputes the debt because that would be considered collection activity).

### *Use of False, Deceptive and Misleading Warrant to Collect Debt*

34.     On October 7, 2010, Plaintiff filed a Sworn Denial in the state court collection lawsuit stating that she had not entered into any agreement with Defendant Capital Financial for the repayment of debt or otherwise.

35.     On June 27, 2011, after the matter was continued three times, Defendant Hosto, on behalf of Defendant Capital Financial, moved the Blount County General Sessions Court to nonsuit the case.

36. The state court collection lawsuit was filed by Defendants Capital Financial and Hosto against Plaintiff knowing they did not have and would not obtain the evidence necessary to establish in the state court collection lawsuit that Plaintiff owed the debt.

37. To date, almost a year after the filing of the state court collection lawsuit, Defendants Capital Financial and Hosto have not provided any evidence, including the signed contract, or a qualified witness, necessary to prove that Plaintiff owes the debt to Defendant Capital Financial.

38. Defendants Capital Financial and Hosto did not have a copy of the written contract signed by Plaintiff or other evidence of the alleged debt prior to the preparation, filing, and serving the Civil Warrant on Plaintiff, and, almost a year after the filing of the lawsuit, have still not provided any evidence to Plaintiff.

39. "[W]ithout a written contract signed by Defendants, . . . [Plaintiff] may not recover attorney's fees or a contract rate of interest." *Discover Bank v. Henson*, 2008 WL 5272530 at *3, December 18, 2008 (Tenn. Ct. App) (*perm. app. den*. Sup. Ct., June 15, 2009) (quoting, *Holcomb v. Cagle*, 277 S.W.3d 393, 397-98 (Tenn. Ct. App. 2008) (*perm. app. den*. Sup. Ct., December 15, 2008)).

40. The amount of $5,575.11 represented by Defendants Capital Financial and Hosto in the Civil Warrant as allegedly owed by Plaintiff included interest accrued at a rate exceeding the maximum interest rate of 10% per annum allowed under Tennessee law for unwritten contracts.

41. The amount of $5,575.11 represented by Defendants Capital Financial and Hosto as owed by Plaintiff included principal which had not been correctly reduced due to misapplication of payments on the balance owed as a result of the addition of interest at a

rate exceeding the maximum interest rate of 10% per annum allowed under Tennessee law for unwritten contracts.

42. The amount of $5,575.11 represented by Defendants Capital Financial and Hosto as owed by Plaintiff included attorney fees in the amount of $554.92 which amount was not expressly authorized by the agreement creating the debt or permitted by law.

43. Defendants Capital Financial and Hosto intentionally made business decisions not to obtain and review the written contract signed by Plaintiff or other evidence of the alleged debt prior to filing the state court collection lawsuit to determine if Defendant Capital Financial was entitled to the amount of debt claimed as owed, but chose to rely on other parties for this information.

44. Defendant Capital Financial's business decision to rely entirely on Citibank or an assignee of Citibank's as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all without reviewing the written contract signed by Plaintiff or other evidence of the alleged debt was not a procedure reasonably adapted to avoid using a deceptive or misleading representation or means in connection with collection of the debt.

45. By making a business decision to not obtain the written contract signed by Plaintiff or other evidence of the alleged debt when purchasing the alleged debt or prior to filing the state court collection lawsuit against Plaintiff, Defendant Capital Financial intentionally used a deceptive and misleading representation in connection with collection of the debt as to the amount of debt allegedly owed by Plaintiff and the fact that Plaintiff owed the alleged debt at all.

46. Defendant Hosto's business decision to rely entirely on Defendant Capital Financial as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all without reviewing the written contract signed by Plaintiff or other evidence of the alleged debt was not a procedure reasonably adapted to avoid using a deceptive or misleading representation or means in connection with collection of the debt.

47. By making a business decision not to obtain the written contract signed by Plaintiff or other evidence of the alleged debt prior to filing the state court collection lawsuit against Plaintiff, Defendant Hosto intentionally used a deceptive and misleading representation in connection with collection of the debt as to the amount of debt allegedly owed by Plaintiff and the fact that Plaintiff owed the alleged debt at all.

48. The Civil Warrant stated an amount due for principal, interest, and attorney fees which was not expressly authorized by the agreement creating the debt or permitted by law.

49. Defendants Capital Financial and Hosto failed to maintain (i.e., actually employ or implement) procedures reasonably adapted to avoid errors under the FDCPA.

50. Any procedures maintained (i.e., actually employed or implemented) by Defendants Capital Financial and Hosto to avoid violating the FDCPA were not reasonably adapted to avoid misrepresenting the amount of debt allegedly owed in the Civil Warrant.

51. By using deceptive and misleading representations or means in connection with collection of the debt by stating in the Civil Warrant that Defendant Capital Financial was entitled to (a) interest accrued at a rate exceeding the maximum interest rate of 10% per annum allowed under Tennessee law for unwritten contracts, (b) principal which had not been correctly reduced due to misapplication of payments on the balance owed as a result of the addition of interest at a rate exceeding the maximum interest rate of 10% per

annum allowed under Tennessee law for unwritten contracts, and (c) attorney fees not expressly authorized by the agreement creating the debt or permitted by law, Defendants Capital Financial and Hosto falsely represented the character, amount and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A), and the false representation of the character, amount or legal status of the debt is the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10).

52. By filing the Civil Warrant with the use of deceptive and misleading representations or means in connection with collection of the debt while unreasonably relying on Citibank or an assignee of Citibank as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all and without reviewing a copy of the written contract signed by Plaintiff or other evidence of the alleged debt, Defendants Capital Financial and Hosto communicated credit information to the General Sessions Court, the general public, and the Plaintiff which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

53. By attempting to collect amounts (principal, interest, and attorney fees) not expressly authorized by the agreement creating the debt or permitted by law, Defendants Capital Financial and Hosto violated 15 U.S.C. § 1692f(1).

54. The statement in the Civil Warrant that Plaintiff owed $5,575.11, including principal in the amount of $2,774.62, accrued pre-judgment interest of $2,245.57, and reasonable attorney fees in the amount of $554.92, was an amount based on a business decision not to obtain a copy of written contracts signed by consumers or other evidence of the alleged debt prior to filing state court collection lawsuits against them and was the use of

deceptive and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendants Capital Financial and Hosto had attempted to properly calculate the amount owed prior to filing the Civil Warrant, when Defendants Capital Financial and Hosto had intentionally made no effort to do, and amount of debt alleged as owed was not authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

### *Use of False, Deceptive and Misleading Affidavit to Collect Debt*

55. An affidavit filed in support of a civil warrant on a sworn account is filed to attest to the correctness of the amount allegedly owed on the account. Tenn. Code Ann. § 24-5-107(a).

56. Defendant Milner, who authored the sworn Affidavit attached to the Civil Warrant filed on July 9, 2010, swore under penalty of perjury that the following statements are true:

    (a)    "That she was an "authorized agent, [and] . . . the person in charge of the business records for [Defendant Capital Financial]."

    (b)    "That after the allowance of all credits and offsets, STEFANIE HONEYCUTT owes the following sum of $2,774.62 plus interest accrued in the amount of $1,824.07 for a total amount due of $4,598.69 as of November 16, 2009. Additionally, [Defendant Capital Financial] seeks pre-judgment interest from November 16, 2009, until the date of the judgment."   (all caps in original)

57. Defendant Milner did not review any records of the originator of the debt or make any effort to determine if there was a contract signed by Plaintiff and, if so, whether the

amount of the debt as to principal and interest she alleged was owed by Plaintiff in the Affidavit was correct, prior to signing the Affidavit.

58.     The reason Defendant Milner did not review any records of the originator of the debt or make any effort to determine if there was a contract signed by Plaintiff and, if so, whether the amount of the debt as to principal and interest she alleged was owed by Plaintiff in the Affidavit was correct, prior to signing the Affidavit was because Defendant Capital Financial had made a business decision not to obtain any records of the originator of the debt that would have allowed her to make this determination.

59.     The only records held by Defendant Capital Financial at the time Defendant Milner signed the sworn Affidavit were computer records which contained very limited information about Plaintiff's alleged debt.

60.     The only records that Defendant Milner was able to review prior to signing the sworn Affidavit were the limited computer records obtained by Defendant Capital Financial from Citibank or an assignee of Citibank.

61.     Without any records of the originator of the debt available for her review to determine if there was a contract signed by Plaintiff and, if so, whether the amount of the debt as to principal or interest she alleged was owed by Plaintiff in the Affidavit was correct as required by Tennessee state law for a sworn account, it was impossible for Defendant Schaefer to truthfully make a sworn affidavit as to the correctness of the amount owed. See, *Foster v. Scott County*, 65 S.W. 22 (Tenn., 1901) (interpreting an earlier version of Tenn. Code Ann. § 24-5-107(a)) ("The statute is plain that the correctness of the account must be sworn to by the plaintiff. It does not say nor imply that the oath may be made by a bookkeeper or salesman or agent of any kind. If the plaintiff cannot, for want of proper

information, make the oath himself, then he does not bring himself within the provisions of the act, and is not entitled to its benefit, but must prove his account as in other cases. We cannot extend or enlarge the terms of the statute to let in the sworn ex parte statement of a third person, no matter what may be his means or the extent of his information, nor how much such a holding may be desirable." *Id* at 23.)

62. When Defendant Milner signed the sworn Affidavit, she had no personal knowledge of the balance of the alleged debt and she had no personal knowledge of the amount of interest or other charges that had accrued on the alleged debt, as she had never seen any agreement regarding the alleged debt much less an agreement that allowed for interest or other charges on the alleged debt.

63. Neither Defendant Capital Financial nor Defendant Milner had any personal knowledge regarding the books and records of Citibank, prior to Defendant Milner signing the sworn Affidavit.

64. Nonetheless, Defendants, planning on a default in the state court collection lawsuit, attempted to create the illusion for the state court judge and the Plaintiff that Defendant Milner possessed such personal knowledge.

65. Form affidavits, such as the one filed in the state court lawsuit against Plaintiff, are generated automatically by a computer owned by Defendant Capital Financial upon request and are routinely provided to Defendant Milner who sign numerous affidavits each day without the information or ability to make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff, within the requirements of Tennessee state law.

66. These form affidavits are attached to and filed with the Civil Warrant by Defendant Hosto.

67. Defendants filed the state court collection lawsuit against Plaintiff in an attempt to collect the debt using a false, deceptive and misleading Affidavit as the only evidentiary basis to support its claims that the Plaintiff owed Defendant Capital Financial the amount of $5,575.11.

68. The intentional use by the Defendants of the false, deceptive and misleading Affidavit in connection with collection of the debt was not a procedure reasonably adapted to avoid violating the FDCPA in their attempts to collect the alleged debt from Plaintiff.

69. The intentional use by Defendants of the form affidavits when their use is clearly in violation of the state law requirements for sworn accounts is the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

70. The attestations made by Defendant Milner in the Affidavit regarding the debt, including, but not limited to the balance of the debt owed by Plaintiff, were misrepresentations made without any personal knowledge as to the truth of the statements in violation of 15 U.S.C. § 1692e(2)(A), and the false representation of the character, amount or legal status of the debt is the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and are an unfair means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

71. Defendants Capital Financial and Hosto intentionally use virtually identical form affidavits in these lawsuits, alleging facts not in possession of Defendant Capital Financial and to which its officers, employees and/or agents have no personal knowledge.

72.     Defendants Capital Financial and Hosto engage in a pattern and practice of filing lawsuits knowingly using false, deceptive, and misleading affidavits signed by persons who lack personal knowledge of the truthfulness of the matters attested to.

73.     By intentionally filing the state court collection lawsuit against Plaintiff in an attempt to collect the debt while using the false, deceptive, and misleading Affidavit signed by Defendant Milner which alleged facts not in her possession and in violation of Tennessee state law, Defendants violated 15 U.S.C. § 1692e(5), and the threat to take any action that cannot legally be taken is the use of a false, misleading and deceptive representation or means to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10).

74.     By filing the state court collection lawsuit against Plaintiff in an attempt to collect the debt with the use of an affidavit that contains false, deceptive, and misleading statements made by individuals who allege facts not in their possession and in violation of Tennessee state law, Defendants use false, deceptive, and misleading representations in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendants had the legal right to attempt to collect the debt in the manner and amount in which they attempted to collect, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

75.     Defendants did not have a copy of the written contract signed by Plaintiff or other evidence as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all prior to preparing, signing and filing the Affidavit.

76.     The amount of $2,774.62 plus interest accrued in the amount of $1,824.07, for a total amount due of $4,598.69 as of November 16, 2009, represented in the Affidavit by

Defendant Milner as owed, included interest accrued at a rate exceeding the maximum interest rate of 10% per annum allowed under Tennessee law for unwritten contracts.

77. The amount $2,774.62 plus interest accrued in the amount of $1,824.07, for a total amount due of $4,598.69 as of November 16, 2009, represented in the Affidavit by Defendant Milner as owed, included principal which had not been correctly reduced due to misapplication of payments to the balance owed as a result of the addition of interest at a rate exceeding the maximum interest rate of 10% per annum allowed under Tennessee law for unwritten contracts.

78. Defendants intentionally chose not to have Defendant Milner review a copy of the written contract signed by Plaintiff or other evidence as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all, prior to executing the sworn Affidavit.

79. By using false, deceptive, and misleading representations or means in connection with collection of the debt by stating in the sworn Affidavit that Defendant Capital Financial was entitled to (a) interest which exceeded the maximum interest rate of 10% per annum allowed under Tennessee law for unwritten contracts, and (b) principal which had not been correctly reduced due to misapplication of payments to the balance owed as a result of the addition of interest at a rate exceeding the maximum interest rate of 10% per annum allowed under Tennessee law for unwritten contracts, Defendants falsely represented the character, amount and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A), and the false representation of the character, amount or legal status of the debt is the use of a false, deceptive, and misleading representation or means in connection with

collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10).

80. By using false, deceptive, and misleading representations or means in connection with collection of the debt by filing the false, deceptive, and misleading Affidavit which stated Plaintiff owed $2,774.62 plus interest accrued in the amount of $1,824.07, for a total amount due of $4,598.69 as of November 16, 2009, Defendant Capital Financial and its agents communicated credit information to the General Sessions  Court, the general public, and Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

81. By attempting to collect amounts in the sworn Affidavit (principal and interest) not expressly authorized by the agreement creating the debt or permitted by law, Defendant Capital Financial violated 15 U.S.C. § 1692f(1).

82. The statement in the Affidavit that Plaintiff owed $2,774.62 plus interest accrued in the amount of $1,824.07, for a total amount due of $4,598.69 as of November 16, 2009, after Defendants Capital Financial an Hosto intentionally chose not to have Defendant Milner review a copy of the written contract signed by Plaintiff or other evidence as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all, prior to executing the sworn Affidavit, was the use of deceptive and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendants had attempted to properly calculate the amount owed prior to filing the Affidavit, when Defendants had intentionally made no effort to do so, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

18

*Collection Service Licensing*

83. "Collection service" means any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills, or other forms of indebtedness **irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity.** Tenn. Code Ann. § 62-20-102(3). (emphasis added)

84. No person shall commence, conduct, or operate any collection service business in this state unless such person holds a valid collection service license issued by the [Collection Service] board under this chapter, or prior state law. Tenn. Code Ann. § 62-20-105(a).

85. As of the date of the filing of the collection lawsuit against Plaintiff, Defendant Capital Financial had not applied for or been issued a valid collection service license by the Tennessee Collection Service Board that is necessary for a collection service to legally collect debts in Tennessee.

86. Any procedures maintained (i.e., actually employed or implemented) by Defendant Capital Financial to avoid errors under the FDCPA were not reasonably adapted to avoid using false, deceptive, or misleading representations and means in connection with collection of debts or attempts to collect debts from Tennessee consumers that they received by assignment and/or purchase by failing to be licensed as a collection service by the Tennessee Collection Service Board prior to filing the collection lawsuit against Plaintiff in an attempt to collect the debt.

87. Any procedures maintained (i.e., actually employed or implemented) by Defendant Capital Financial to avoid errors under the FDCPA were not reasonably adapted to avoid

threatening to take any action that cannot legally be taken by failing to be licensed as a collection service by the Tennessee Collection Service Board prior to filing the collection lawsuit against Plaintiff in an attempt to collect the debt.

88.     Any procedures maintained (i.e., actually employed or implemented) by Defendant Capital Financial to avoid errors under the FDCPA were not reasonably adapted to avoid using unfair or unconscionable means to collect or attempt to collect debts from Tennessee consumers by failing to be licensed as a collection service by the Tennessee Collection Service Board prior to filing the collection lawsuit against Plaintiff in an attempt to collect the debt.

89.     By attempting to collect the debt from Plaintiff at a time when Defendant Capital Financial was not licensed as a collection service by the Tennessee Collection Service Board, Defendant Capital Financial violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f. See, *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1190 fn. 9 (11th Cir. 2010) ("See, e.g., *Sibley v. Firstcollect, Inc.,* 913 F.Supp. 469, 471 (M.D.La. 1995); *Russey v. Rankin*, 911 F. Supp. 1449, 1459 (D.N.M. 1995) (attempting to collect a debt without first registering as a debt collector as required by New Mexico statute violates the FDCPA); *Kuhn v. Account Control Tech, Inc.*, 865 F. Supp. 1443, 1451-52 (D.Nev. 1994) (finding failure to register as a debt collector under Nevada law violated 15 U.S.C. § 1692f); *Gaetano v. Payco of Wisc. Inc.*, 774 F.Supp. 1404, 1414-15 n. 8 (D.Conn.1990) (finding failure to register as a debt collector in Connecticut violated the FDCPA because not registering 'deprived the plaintiff of her right as a consumer debtor residing within the state to have the Defendants' qualifications as a collection agency reviewed by state

authorities.'"); Also, see, *Bradshaw v. Hilco Receivables, LLC,* No. RBD-10-113, 2011 WL 652476, at *10 (Feb. 23, 2011 D. Md.).

### *Summary*

90.     The above-detailed conduct by Defendants in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of numerous and multiple provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA.

### *Respondeat Superior Liability*

91.     In addition to their individual liability under the FDCPA, the acts and omissions of Defendants Milner and Hosto as agents for Defendant Capital Financial and who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Capital Financial.

92.     The acts and omissions by Defendants Milner and Hosto were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant Capital Financial in collecting consumer debts.

93.     By committing these acts and omissions against Plaintiff, Defendants Milner and Hosto were motivated to benefit their principal, Defendant Capital Financial.

94.     Defendant Capital Financial is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by Defendant Capital Financial including, but not limited to violations of the FDCPA, in their attempts to collect the debt from Plaintiff.

21

## TRIAL BY JURY

95.    Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.

Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692 *et seq*

96.    Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

97.    The foregoing acts and omissions of Defendants constitute numerous and multiple violations

of the FDCPA including, but not limited to each and every one of the above-cited provisions

of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to Plaintiff.

98.    As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages

pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury;

statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and,

reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every

Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and

every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;

- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against each and every Defendant, and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

07/07/11                                      Respectfully submitted,

                                              **STEFANIE HONEYCUTT,**

                                              _____
                                              Alan C. Lee, Esq., BPR #012700
                                              Attorney for Plaintiff
                                              P. O. Box 1357
                                              Talbott, TN 37877-1357
                                              (423) 736-0201
                                              info@alanlee.com

## VERIFICATION OF COMPLAINT AND CERTIFICATION

**STATE OF TENNESSEE**  )
**COUNTY OF BLOUNT**  )

Pursuant to 28 U.S.C. § 1746, Plaintiff Stefanie Honeycutt, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____  _____,  _____
                    Month           Day        Year

By: _____
        Stefanie Honeycutt